```
UNITED STATES DISTRICT COURT                     ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                 :
REUBEN BRAMBLE,                                  :
                                                 :
                          Petitioner,            :
                                                 :   MEMORANDUM AND ORDER
           - against -                           :
                                                 :   10-CV-5775 (JG)
                                                 :
WILLIAM CONNOLLY, SUPERINTENDENT,                :
FISHKILL CORRECTIONAL FACILITY,                  :
                                                 :
                          Respondent.            :
----------------------------------------------------------------- X
```

A P P E A R A N C E S:

    REUBEN BRAMBLE
        # 04-A-4591
        Fishkill Correctional Facility
        P.O. Box 1245
        Beacon, New York 12508
        *Petitioner, pro se*

    CHARLES J. HYNES
        Kings County District Attorney
        350 Jay Street
        20th Floor
        Brooklyn, New York 11201
    By:    Ruth Elizabeth Ross
        *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

        Reuben Bramble petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his August 2004 conviction in New York State Supreme Court, Kings County, of manslaughter in the second degree and criminal possession of a weapon in the fourth degree pursuant to New York Penal Law §§ 125.15(1) and 265.01(2). Appearing *pro se*, Bramble seeks habeas relief on the ground that he was denied the effective assistance of counsel and due process of law when the trial court failed to inform Bramble's trial counsel of a jury note requesting a read-back of certain testimony. Oral argument was heard on May 17, 2011, at

which Bramble appeared via videoconference from his place of incarceration.[1]  For the reasons stated below, the petition is denied.

## BACKGROUND

A.  *The Offense Conduct*

The evidence at trial established that on the evening of June 15, 2003, Bramble escorted home his then-girlfriend, Tanisha Morgan.  Ramon Ellis, Morgan's estranged husband, was waiting outside Morgan's home when they arrived.  Ellis and Morgan had been separated for a few months as of that evening.  Ellis and Bramble departed separately and walked across the street toward a bus stop.  The two men got into a verbal altercation that led to Ellis's punching Bramble in the face.  A fist-fight ensued, and ultimately Bramble pulled out a knife and stabbed Ellis once in the chest.  Bramble then fled the scene.  Ellis died as a result of the stab wound.

B.  *Procedural History*

1.  *The Trial and Sentencing*

Bramble was indicted in Kings County on two counts of second-degree murder – intentional and depraved indifference murder – and criminal possession of a weapon in the fourth degree.  He proceeded to a jury trial before Justice Guy Mangano, Jr. of the New York State Supreme Court, Kings County.  The People called as witnesses Juan Ellis, the victim's brother, Police Officer Victor Crespo, Detectives Paul Walsh and Leonard Cocco, and Medical Examiner Beverly Leffers.  The defense called Bramble, Tanisha Morgan and Kendrick Bramble, the petitioner's brother.  In addition to the counts charged in the indictment, counts of manslaughter in the first and second degrees were submitted to the jury.  On July 21, 2004, the jury returned a verdict convicting Bramble of manslaughter in the second degree and criminal possession of a

---

[1]  Counsel for Respondent failed to appear.  After a 30-minute wait, I permitted Bramble, who was being held in a videoconference room by prison officials, to address the court briefly and *ex parte*.

2

weapon in the fourth degree. On August 11, 2004, Justice Mangano adjudicated Bramble a second felony offender and sentenced him to an indeterminate term of incarceration of seven to fourteen years on the manslaughter count and a concurrent one-year term of incarceration on the weapon count.

2.   *The Direct Appeal*

Bramble, represented by counsel, appealed from the judgment of the Supreme Court, contending that: (1) the People had failed to disprove his justification defense beyond a reasonable doubt; (2) there was insufficient evidence on which to convict him of second-degree manslaughter, and that conviction was also against the weight of the evidence; (3) the trial court erred in failing to charge the jury that a finding of not guilty by reason of justification on any of the homicide counts would preclude guilty verdicts on the remaining homicide counts; (4) trial counsel was constitutionally ineffective in failing to request the foregoing charge and object to its omission; and (5) the trial court deprived Bramble of due process and the effective assistance of counsel by failing to inform defense counsel about and respond to a jury note requesting a read-back of Detective Cocco's testimony, which would have influenced the jury's assessment of the voluntariness of Bramble's inculpatory post-arrest statement to Cocco. On February 6, 2007, the Appellate Division, Second Department, affirmed Bramble's conviction, holding that the evidence was sufficient both to disprove the justification defense beyond a reasonable doubt and to uphold the manslaughter conviction. *See People v. Bramble*, 829 N.Y.S.2d 205, 205 (2d Dep't 2007) ("[V]iewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to disprove the justification defense beyond a reasonable doubt." (citations omitted)); *id.* at 206 ("Based upon the evidence, . . . the jury could have concluded that the defendant did not intend to kill the victim, but rather that he acted recklessly, with a

conscious disregard of a substantial, unjustifiable, and grave risk that the victim would die." (citations omitted)). The court also exercised its factual review power and held that the guilty verdict was not against the weight of the evidence. *Id.* In addition, the court held that Bramble's contention regarding the jury charge was unpreserved and without merit, the ineffective assistance claim was without merit, and the contention regarding the jury note was "based on matter dehors the record, and therefore . . . not properly before us on direct appeal." *Id.* (citation omitted).

Bramble applied for leave to appeal from this decision but a judge of the Court of Appeals denied his application on May 14, 2007. *People v. Bramble*, 8 N.Y.3d 982 (2007) (Read, J.).

3. *The Motion To Vacate the Judgment*

a. *The Motion*

On December 22, 2008, Bramble moved[2] in the Appellate Division to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. He contended that the court file for his case contained a jury note, dated July 24, 2004 (but without a time designation), that was never mentioned on the trial record, and that the trial court had "ignored the note entirely." Bramble § 440 Mot., at 4. Appended to Bramble's motion was an affidavit from Kenneth Marsh, Juror No. 10 in his trial, in which Marsh stated that he remembered all of the jury notes submitted in the trial and recalled the jury's request for a read-back of Detective Cocco's testimony. He further stated that the trial court never provided the jury with the requested read-back. Marsh indicated that he had been shown all of the jury notes, including the contested one, by a private investigator for Bramble prior to signing his affidavit.

---

[2] Bramble retained his trial counsel, Dennis Coppin, to represent him in connection with his § 440 motion.

4

Ex. D to Bramble § 440 Mot. Defense counsel also attached to the § 440 motion an affidavit from that investigator, John J. Holder, Jr., in which Holder explained the measures he had taken to locate the jurors in Bramble's trial and the details of his interview with Marsh. Ex. C to Bramble § 440 Mot.

  b. *The Response*

Respondent's counsel filed her opposition to Bramble's motion on June 11, 2009. She informed the court that, apparently due to an administrative oversight, none of the jury notes in the court file was properly marked as a court exhibit or recorded in the courtroom logbook. Counsel also stated that she had spoken with Sergeant Scott Conelly, the senior court officer assigned to Justice Mangano's part on the date the contested jury note was written, and that although Conelly could not recall Bramble's trial independently, he provided counsel with a detailed description of the protocol in Justice Mangano's part for handling and storing jury notes. In an affidavit that counsel attached to her opposition, Conelly attested that typically one court officer[3] is stationed outside the jury room throughout deliberations, either the court officers or the courtroom clerk collects everything from the jury room at the end of each day of deliberations, including any notes, and the courtroom clerk then brings those items to the courtroom and stores them there. Conelly further explained that each time the jury has a note for the judge, the foreperson hands it to the court officer outside the jury room, who hands it to the courtroom clerk, who brings it to the judge. Finally, Conelly stated that the juror who writes a given note generally enters the time on the note; in the absence of such a time notation, either the

---

[3] On the basis of court records, Conelly was able to affirm that Court Officers Rich Antokel, Kevin McGahon and Matt Santapaga were also assigned to Justice Mangano's part on July 20, 2004, but he stated that Santapaga was actually on vacation that day. Conelly Aff. ¶ 2. He further explained that court officers often take turns sitting outside the jury room during deliberations and give each other breaks when necessary. *Id.* ¶ 4.

5

court officer instructs the foreperson to enter the time on the note or the courtroom clerk does so herself before delivering it to the judge. Ross Affirmation ¶¶ 13-17; Conelly Aff. ¶¶ 2-6.

        c.    *The Decision*

In a written decision dated June 18, 2009, Justice Mangano stated that he had not received a note from the jury requesting a read-back of Detective Cocco's testimony and that Bramble had failed to adduce the requisite substantial evidence to overcome the presumption of regularity in court proceedings. On December 7, 2009, a justice of the Appellate Division denied Bramble's request for leave to appeal from the Supreme Court's denial of his § 440 motion. *People v. Bramble*, 2009 N.Y. Slip Op. 90478U, 2009 N.Y. App. Div. LEXIS 9870 (2d Dep't Dec. 7, 2009) (Mastro, J.). The following January, a judge of the New York Court of Appeals dismissed Bramble's application for leave to appeal from the Appellate Division's December 7, 2009 order. *People v. Bramble*, 2010 N.Y. Slip Op. 97024U, 2010 N.Y. LEXIS 477 (Jan. 26, 2010) (Jones, J.).

    4.    *The Instant Petition*

Bramble filed this petition for a writ of habeas corpus *pro se* on November 29, 2010,[4] contending that (1) the trial court failed to comply with its statutory obligations to respond to jury requests pursuant to CPL § 310.30, and (2) the trial court erred in denying Bramble's § 440 motion without a hearing on the ground that the contested jury note was outside the record. Pet. at 6, 6A.

---

[4] The petition actually was filed with the Court on December 9, 2010, but it is dated November 29, 2010, and the "prison mailbox" rule designates the latter date as the operative one in fixing the date of filing for AEDPA statute of limitations purposes. *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (per curiam).

DISCUSSION

A.  *The Statute of Limitations*

With the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress imposed a one-year statute of limitations on habeas petitions challenging state-court convictions. *See* 28 U.S.C. § 2244(d)(1). Bramble seeks to challenge a conviction that became final in August of 2007. Specifically, on May 14, 2007, the New York Court of Appeals denied Bramble's application for leave to appeal from the Appellate Division's decision affirming his conviction. Bramble then had 90 days within which to petition the United States Supreme Court for a writ of certiorari. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001); *see also* Sup. Ct. R. 13(1) ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."). He elected not to do so, and his conviction thus became final upon the expiration of that 90-day period, *i.e.*, on August 13, 2007.[5] Bramble had until August 13, 2008 to file his petition for a writ of habeas corpus, but he did not do so until more than two years after that date.

A properly filed application for state post-conviction relief will toll the limitations period for the time during which that application is pending. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Bramble moved to vacate his conviction on December 22, 2008, more than four months after the deadline for filing his federal habeas petition. Because the limitations period had already expired, Bramble finds no comfort in the tolling that otherwise

---

[5] Because the ninetieth day after May 14, 2007 was a Sunday, Bramble's deadline for filing a federal habeas petition instead would have fallen on the following Monday, August 13, 2007. *See* Fed. R. Civ. P. 6(a)(1)(C).

7

would apply under 28 U.S.C. § 2244(d)(2) to the time period during which his § 440 motion was pending.[6] *See, e.g.*, *Doe v. Menefee*, 391 F.3d 147, 154 (2d Cir. 2004) ("When the AEDPA limitations period expired on November 19, 1999, Wall had not yet filed the § 440 motion, thereby losing the opportunity to invoke 28 U.S.C. § 2244(d)(2)'s provision for tolling the limitations period during the pendency of a state post-conviction motion. *Lawrence v. Greene*, No. 06-CV-0202, 2011 WL 1327128, at *3 (E.D.N.Y. Mar. 31, 2011) (§ 440 motion does not toll AEDPA limitations period if filed after the expiration of that one-year period) (citing *Smith v. McGinnis*, 208 F.3d 13, 16 (2d Cir. 2000) (per curiam)). Accordingly, Bramble's petition is untimely and must be dismissed unless he can demonstrate that he qualifies for equitable tolling.

In order to be eligible for equitable tolling, a habeas petitioner must establish "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance[] stood in his way and prevented timely filing.'" *Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010) (quoting *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quotation marks omitted)) (emphasis omitted). The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling," and the determination of whether a circumstance is

---

[6] Bramble's § 440 motion, filed on December 22, 2008, was denied on June 18, 2009, and a justice of the Appellate Division, Second Department denied his application for leave to appeal from that decision on December 7, 2009. (Although a judge of the Court of Appeals thereafter dismissed Bramble's application for further review on January 26, 2010, the interval between the Appellate Division's denial and that decision is not counted for tolling purposes. *See Felton v. Mazzuca*, No. 98-CV-4567, 2004 WL 2072538, at *2 (S.D.N.Y. Sept. 15, 2004) ("[O]nce the Appellate Division denies leave to appeal the denial of a § 440.10 motion, pursuant to C.P.L. § 460.15, New York law does not provide for an application for leave to appeal to the Court of Appeals, pursuant to C.P.L. § 460.20."); *id.* (§ 440 motion ceases to be pending as of Appellate Division's denial of leave to appeal from Supreme Court's decision denying the motion because no further appellate review is available at that point) (citing *Geraci v. Senkowski*, 211 F.3d 6, 9 (2d Cir. 2000), *superseded by statute on other grounds*, N.Y. C.P.L. § 450.90(1)).) Because "a state-court petition is [deemed] 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures," *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999) (applying this rule to a § 440 motion filed in New York's Second Department), the one-year limitations period applicable to Bramble's habeas petition would have been tolled by 350 days (the time between December 22, 2008 and December 7, 2009). Accordingly, had Bramble filed his § 440 motion within one year of August 13, 2007, he would have been entitled to 350 days of tolling. Yet even this would not have salvaged Bramble's federal habeas petition; excluding those 350 days from the one-year limitations period, Bramble's habeas petition still would have been untimely by approximately one year and four months.

8

extraordinary turns *not* on "how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather [on] how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Dillon v. Conway*, --- F.3d ---, 2011 WL 1548955, at *4 (2d Cir. 2011) (per curiam) (quotation marks omitted). In addition, a "petitioner seeking equitable tolling must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Jenkins*, 630 F.3d at 303 (quotation marks omitted).

I construe Bramble's reply brief to allege the following extraordinary circumstances preventing his timely filing: (1) his appellate counsel misled him as to the avenues of post-conviction relief available to him and failed to inform him of the narrow window of time in which they would remain available, and (2) counsel was at least negligent in (a) promising Bramble that he would file a § 440 motion on his behalf, (b) making no progress toward that end in the span of a year and a half, and (c) ultimately deciding against filing the motion. By the time Bramble retained Dennis Coppin to handle his § 440 motion in August 2008,[7] the one-year limitations period for a federal habeas petition had already expired. Thus, the essence of Bramble's extraordinary circumstances argument, read liberally, is that he was lulled by his attorney into believing (1) that he would be preserving his rights by first proceeding with a § 440 motion in state court, (2) that counsel would need to complete a thorough investigation prior to filing that motion, and (3), although Bramble does not argue this explicitly, that filing a § 440 motion was a condition precedent to filing a federal habeas petition. It appears that Bramble's change of counsel in August of 2008, rather than dispelling these beliefs, worked to reaffirm at

---

[7] At oral argument, Bramble asserted that he retained Coppin for the § 440 motion in August 2008.

9

least the second of them, *i.e.*, that a lengthy investigation needed to be conducted and a juror's affidavit secured before filing the § 440 motion.

As for whether Bramble was reasonably diligent in pursuing his rights, Bramble's correspondence with his appellate counsel after the Appellate Division's affirmance of his conviction, *see* Bramble Reply Br. at 8 (Letter dated March 2, 2007 from appellate counsel to Bramble ("I apologize for not responding to your recent letters a bit sooner . . . .")), and his efforts to pursue collateral relief in state court through counsel demonstrate a degree of diligence on his part prior to the much-delayed filing of his § 440 motion.

In spite of the foregoing facts and contentions, there are serious problems with Bramble's equitable tolling claim. First, though it is true that the actions of counsel can, in an appropriate case, warrant equitable tolling, such relief has been found appropriate only in cases involving egregious attorney misconduct.[8] Whether the requisite level of egregiousness exists in

---

[8] Such misconduct was arguably present in *Holland v. Florida*, 130 S. Ct. 2549 (2010) (reversing Eleventh Circuit's decision holding equitable tolling *per se* inapplicable to cases of attorney misconduct lacking proof of, *inter alia*, attorney bad faith, dishonesty, divided loyalty, or mental impairment). Counsel for Holland, who had been convicted of first-degree murder and sentenced to death in state court, failed to timely file a federal habeas petition on Holland's behalf or to do the research necessary to determine the filing date, despite Holland's repeated entreaties that he do so and his letters identifying the law surrounding the AEDPA limitations period and the necessity of complying with the filing deadline. Counsel also did not respond to Holland's letters and calls over a period of years, and failed to inform Holland of the "crucial fact" for habeas filing purposes that the Florida Supreme Court had denied his petition for state post-conviction review. *Id.* at 2564; *see also id.* at 2555-59. The Supreme Court, in observing this litany of failures, stated that "this case may well be an 'extraordinary' instance in which petitioner's attorney's conduct constituted far more than 'garden variety' or 'excusable neglect,'" and remanded the case for the "equitable, often fact-intensive inquiry" warranted for equitable tolling claims. *Id.* at 2564, 2565 (quotation marks omitted). In *Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003), a decision cited approvingly by the *Holland* Court, the Second Circuit found an attorney's misconduct sufficiently egregious to qualify as an "extraordinary circumstance" for equitable tolling purposes and vacated the district court's judgment to the contrary. Baldayaque's wife and her friend had retained counsel to represent Baldayaque in federal post-conviction proceedings and asked him in their first meeting to file a "2255." Counsel subsequently told the two women – without having done any legal research – that it was too late to file a habeas petition pursuant to 28 U.S.C. § 2255. Instead, counsel filed a motion to modify Baldayaque's sentence and to deport him immediately, citing no legal authority. The district court denied the motion and counsel subsequently wrote a letter to Baldayaque, which was returned as undeliverable and which Baldayaque never received, informing him that the motion had been denied and that there was no basis for an appeal. The habeas limitations period expired in the meantime. *Id.* at 148-49. The Second Circuit held that counsel's actions, "taken together, were extraordinary," in that counsel had failed to: do what his client requested on a fundamental matter, *i.e.*, file a § 2255 petition; do any legal research; meet or speak with Baldayaque; keep Baldayaque reasonably informed of the status of his case; and explain the matter to him sufficiently to allow him to make informed decisions regarding the representation. *Id.* at 152; *see also id.* ("[W]hile

a given case is a fact-intensive inquiry, *Holland v. Florida*, 130 S. Ct. at 2565, and here, further evidence would be necessary in order to establish that Bramble's attorney's misconduct rose to that level.

Second, even if Bramble were able to establish the requisite degree of attorney error, he would still face the uphill battle of demonstrating that the "extraordinary circumstances" of such error caused the lateness of his filing, *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003), and that he exercised reasonable diligence in attempting to file his petition after such extraordinary circumstances began, *see Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)). Put differently, Bramble would be entitled to tolling only up to a date on which he, acting with reasonable diligence, could have filed his habeas petition. *Cf. Valverde*, 224 F.3d at 134 ("[I]f an act of confiscation [of an inmate's habeas petition] such as that alleged by Valverde prevents a petitioner from filing before the ordinary limitations period expires, the tolling period must be sufficient to permit the filing of a petition on or before the earliest date after the act of confiscation by which that petitioner, acting with reasonable diligence, should have filed his or her petition."). By this analysis, it is far from clear that even the maximum amount of tolling to which Bramble could lay claim between when the alleged attorney misconduct began (in mid-August 2007, *see* Bramble Reply Br. at 4) and November 2010, when Bramble filed his habeas petition, would be sufficient to render his federal habeas petition timely. Specifically, I am not persuaded that Bramble needed to wait to secure a juror's affidavit regarding the contested jury note before seeking either state or federal post-conviction relief. Bramble's misimpression to that effect, even if attributable to the advice of counsel, would not justify tolling the entirety of

---

the normal errors made by attorneys may not justify equitable tolling, extreme situations such as the one presented here require a different result.").

11

the more than three years leading up to the November 2010 filing date. *See Doe*, 391 F.3d at 175 ("The act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition.")[9]; *see also Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[E]ven if Walker was unsure that he had all the data needed to pursue his claim forcefully, he could have filed a timely complaint and sought to amend it later after receipt of the transcript. . . . Walker does not argue (and has not demonstrated) that the warrant and transcript were necessary to make specific allegations concerning the existence of a conspiracy.").

Even more problematically, Bramble did not act with reasonable diligence to file a federal habeas petition after the state courts denied his § 440 motion. Instead, he waited approximately ten months[10] before handing off his petition to prison officials. Although Bramble explained at oral argument that his misunderstanding of the law – namely, his belief that he could not file his federal habeas petition until one year had passed after the state courts' denial of his § 440 motion – caused his delay in filing his habeas petition, this difficulty with the law does not qualify as an "extraordinary circumstance" for equitable tolling purposes. *See, e.g.*,

---

[9] In *Doe*, the Second Circuit explained that where a habeas petitioner seeks equitable tolling on the ground of "attorney incompetence," "the reasonable diligence inquiry focuses on the purpose for which the petitioner retained the lawyer, his ability to evaluate the lawyer's performance, his financial and logistical ability to consult other lawyers or obtain new representation, and his ability to comprehend legal materials and file the petition on his own." 391 F.3d at 175 (citing *Baldayaque*, 338 F.3d at 153). Bramble stated in his reply brief that he obtained counsel after his conviction became final specifically in order to file a § 440 motion, and it is clear that he had the ability to retain new counsel when the first representation proved unsatisfactory and that he acted on that ability. In addition, as discussed *infra*, he misunderstood or was unaware of AEDPA's restrictions on filing federal habeas petitions. Taking these factors into account, I remain skeptical of Bramble's claim that he was prevented either by counsel or by his own misunderstanding of the law from filing his federal habeas petition for a full three years and three months after his conviction became final.

[10] This figure approximates the length of time between the New York Court of Appeals's January 26, 2010 denial of Bramble's application for further review of the denial of his § 440 motion, and the November 29, 2010 filing of Bramble's federal habeas petition. Although the Appellate Division's December 7, 2009 decision denying Bramble leave to appeal from the Supreme Court's decision is the operative date for determining when Bramble's § 440 motion ceased to be pending, *see supra* note 6, the later date of the Court of Appeals's denial strikes me as the more pertinent one for assessing whether Bramble exercised reasonable diligence with respect to his federal habeas petition.

*Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) (per curiam) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling."); *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000) (per curiam) (citing *Turner*).

For these reasons, it is doubtful, to put it mildly, that Bramble is entitled to sufficient equitable tolling to render his petition timely. However, I need not decide the issue because, as discussed below, Bramble's claim has no merit.

B.  *Bramble's Claim*

Even if Bramble's petition could be salvaged by equitable tolling, it would fail on the merits. Bramble seeks habeas relief on the ground that the trial court deprived him of his due process right to a fair trial and his right to the effective assistance of counsel by failing to notify defense counsel of and respond to a jury note requesting a read-back of Detective Cocco's testimony. Justice Mangano rejected this claim after making a finding of fact that he had not received the jury note in dispute.[11] I review this factual determination as set forth below, pursuant to AEDPA's standard of review.

---

[11] The Supreme Court also stated that the jury note was "*dehors* the record" as a basis for denying Bramble's § 440 motion. I find this holding to be a mischaracterization of the animating reason for the court's decision, *i.e.*, that Justice Mangano simply did not receive the jury note in dispute. Justice Mangano's assertion that that jury note was outside the record was also a misstatement of the law in the sense that collateral proceedings like those brought under § 440 by their very nature allow evidence or claims not previously in the record to be introduced into the record as part of a challenge to a conviction.

As noted above, Bramble's second contention in the instant petition is that the trial court erred in denying his § 440 motion without a hearing and in failing to recognize that § 440 proceedings are the appropriate forum for making evidence previously outside the record part of the record. Despite my agreement with Bramble that the trial court misstated the law on the latter issue, Bramble's claim does not warrant habeas relief. Bramble was given all the process he was due in connection with his § 440 motion: Justice Mangano, who, unusually, filled the roles of both judge and prime witness with respect to the jury note in dispute, reviewed Bramble's motion papers and made a finding of fact on the issue of whether Justice Mangano received the note. In addition, the court's failure to hold an evidentiary hearing on the § 440 motion at which former jurors ostensibly would testify does not, in this case, raise an issue of federal constitutional dimension capable of warranting habeas relief.

1.  *Standard of Review*

AEDPA narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).[12]

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

---

[12] This limitation on relief is referred to as "AEDPA deference." *E.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

Under the "unreasonable application" standard set forth in *Williams*, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411). Elaborating on this standard, the Supreme Court has held that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see also id.* at 786-87 (a state prisoner seeking federal habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *See Richter*, 131 S. Ct. at 785; *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

In addition to the deference owed to state court determinations of fact under § 2254(d), subsection (e) requires that a federal habeas court presume all state court factual determinations to be correct. The petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. *Analysis*

Bramble contends that the trial court's failure to comply with the New York state law governing courts' responses to jury requests deprived him of a fair trial and the effective assistance of counsel. CPL § 310.30 provides that, upon the jury's request for further instruction or information, "the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper." "Determination of the appropriate answer rests within the discretion of the trial court, so long as the answer given does not deprive a defendant of a constitutional right." *McShall v. Henderson*, 526 F. Supp. 158, 161 (S.D.N.Y. 1981).[13]

Federal habeas courts have routinely dismissed claims of a trial court's noncompliance with CPL § 310.30 on grounds that they fail to implicate federal law and a due process right in this context has not been clearly established by the Supreme Court. *See, e.g.*, *Johnson v. Graham*, No. 09-CV-5838, 2010 WL 3855286, at *5, *5 n.36 (S.D.N.Y. Oct. 1, 2010). While I am unpersuaded that this kind of claim is categorically not cognizable on federal

---

[13] After filing his reply brief in this action, Bramble filed a document entitled "Judicial Notice" in which he informed the Court of certain details surrounding his 1994 conviction upon a guilty plea of robbery in the first degree, and requested that the Court and the assistant district attorney assigned to this case produce the case file of his co-defendant in the 1994 prosecution. According to Bramble, a justice of the New York Supreme Court, Kings County, dismissed the indictment (No. 303/94) against Bramble's co-defendant.

I lack the authority to grant Bramble's request to unseal and produce his co-defendant's criminal case file. I also decline to address Bramble's contention, which he failed to raise in the proceedings below or even in the instant habeas petition, that the soundness of his prior conviction depends in part upon what happened in his co-defendant's case, and therefore that the disposition of the latter case is germane to these habeas proceedings. It is true that the trial court adjudicated Bramble a second felony offender based on his 1994 conviction at his sentencing in the prosecution at issue here. At the sentencing hearing, Bramble confirmed on the record that he had committed that offense. Only now, in a submission filed subsequent to his reply brief and only days before oral argument, has Bramble suggested even the faintest hint of a defect in his second felony offender adjudication or the proceedings that resulted in his 1994 conviction. Since he pled guilty to that charge and confirmed his conviction at sentencing, I see no basis to hold this petition in abeyance while Bramble seeks to obtain the sealed file of his co-defendant's case in state court. Finally, I suggested to Bramble during the videoconference that since his co-defendant's challenge to the 1994 indictment (as described by Bramble) was based on a claim that ballistics reports introduced before the Grand Jury were inadmissible hearsay, *see* ECF No. 10, at 3, the co-defendant may have been relying on the intervening Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36 (2004). However, upon further review of Bramble's submission, I see the co-defendant's challenge pre-dated *Crawford*.

habeas review, I reject Bramble's contentions in this case that the trial court failed to notify defense counsel regarding the contested jury note and to provide the jury with a read-back of Detective Cocco's testimony, thereby depriving Bramble of a fair trial, the ability to present a meaningful defense, and the effective assistance of counsel. The trial court notified counsel regarding the other four jury notes and properly responded to all of them, and the court stated in its decision denying Bramble's § 440 motion that it had not received the contested jury note. That finding of fact is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Moreover, the omission of a "time" notation on the jury note in question – in contrast to the other four jury notes – raises the prospect that the jury, after drafting the note, decided for whatever reason not to submit it to the court. And the fact that the other request on the note – to "have the counts explained" – was replicated in one of the time-indicated jury notes to which the trial court *did* respond further supports the trial court's finding of fact.[14]

Bramble has not rebutted the presumption of correctness accorded the state court's finding of fact "by clear and convincing evidence."[15] 28 U.S.C. § 2254(e)(1). Accordingly, I conclude that Bramble's jury note claim is without merit.[16]

---

[14] In addition, it is worth noting that Bramble's counsel displayed able advocacy at trial and subjected Detective Cocco to rigorous cross-examination. Thus, even if there were a failure by the trial court to provide the jury with a read-back of Cocco's testimony, it could not have undermined the meaningfulness of the defense that counsel presented.

[15] Although Bramble points to the affidavits of Kenneth Marsh and investigator John J. Holder, Jr. as evidence rebutting Justice Mangano's finding of fact regarding the jury note, this evidence fails to overcome the presumption of correctness accorded the finding of fact. Affidavits of former jurors or others with personal knowledge could very well constitute "clear and convincing evidence" rebutting the presumption of correctness in a different case. Here, however, Justice Mangano was singularly qualified to speak to whether he personally had received the jury note in dispute. His statement that he did not receive that jury note takes precedence over Marsh's statement that Justice Mangano did receive it, or, more accurately, that the jury note was submitted to Justice Mangano. And the fact that the contested jury note was found in the court file for Bramble's case does not tip the balance in Bramble's favor; that fact more plausibly suggests that a court employee inadvertently included a discarded note in the file than that Justice Mangano ignored a formal communication from the jury. Bramble therefore has failed to overcome the presumption of correctness afforded Justice Mangano's finding of fact.

[16] I do not address Respondent's persuasive contention that this claim was procedurally defaulted because I find that the claim is without merit.

## CONCLUSION

Bramble's petition for a writ of habeas corpus is denied. As Bramble has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So Ordered.

John Gleeson, U.S.D.J.

Date: June 21, 2011
      Brooklyn, New York